UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRASSFIRE, LLC,

     Plaintiffs

v.                                                                      CASE NO.:

STEVEN LARRY LAWS, SUSAN MAYS,
AMBER MURRAY, DEVON WARD,
FARELLE WALKER, MICHELE LAWS,
ASK AMBER, LLC,
FLY RENEGADE PRODUCTIONS, LLC,
TBA POLITICAL PARTNERS,
L&R LOGICAL SOLUTIONS, LLC,
BRIAN LENHART, AND RENEE GORDON,

     Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff Grassfire, LLC, by and through its undersigned counsel, files its Verified Complaint against Defendants, Steven Larry Laws, Susan Mays, Amber Murray, Devon Ward, Farelle Walker, Michele Laws, Brian Lenhart, Ask Amber, LLC, Fly Renegade Productions, LLC, TBA Political Partners, L&R Logical Solutions, LLC, and Renee Gordon as follows:

## PARTIES

1.      Grassfire, LLC is a Wyoming limited liability company doing business in Florida.

2.      Upon information and belief, Steven Larry Laws is an individual residing in Florida.

3.      At all times herein, Steven Larry Laws may also have been acting through the entity "L&R Logical Solutions, LLC", and any reference to Steven Larry Laws herein also includes "L&R Logical Solutions, LLC". L&R Logical Solutions, LLC is a Florida limited liability company with its principal place of business in Florida. Steve Larry Laws is a principal and agent of L&R Logical Solutions, LLC.

4.      Upon information and belief, Susan Mays is an individual residing in Florida.

5.      Upon information and belief, Amber Murray is an individual residing in Florida.

6.      At all times herein, Amber Murray may also have been acting through the entity "Ask Amber, LLC". Ask Amber, LLC does business in Florida. Amber Murray is a principal or agent of Ask Amber, LLC.

7.      Any reference to Amber Murray herein also includes "Ask Amber, LLC".

2

8.      Upon information and belief, Devon Ward is an individual residing in Florida.

9.      Upon information and belief, Michele Laws is an individual residing in Florida.

10.     Upon information and belief, Farelle Walker is an individual residing in Florida.

11.     At all times herein, Michele Laws may also have been acting through the entity "TBA Political Partners", and any reference to Michele Laws herein also includes TBA Political Partners".

12.     Upon information and belief, Brian Lenhart is an individual residing in Florida.

13.     At all times herein, Brian Lenhart may also have been acting through the entity "TBA Political Partners", and any reference to Brian Lenhart herein also includes TBA Political Partners". TBA Political Partners does business in Florida. Michele Laws and Brian Lenhart are principals or agents of TBA Political Partners.

14.     Upon information and belief, Renee Gordon is an individual residing in Florida.

## JURISDICTION AND VENUE

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

31765504241C6

15.     Subject matter jurisdiction is proper with this Court pursuant to 28 U.S.C. section 1331 since the civil action arises under the laws of the United States.

16.     Venue is proper in this Court pursuant to 28 U.S.C. section 1391, including without limitation because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

17.     Grassfire is in the business of running ballot initiative and signature gathering campaigns for its customers.

18.     Grassfire offers and actually provides its services nationwide and in interstate U.S. commerce, including without limitation in the states of California, Oregon, Washington, Ohio, Florida, and Texas.

19.     In or about June 2021, Grassfire began a campaign (the "Campaign") to support a Florida petition drive in favor of the Limited Authorization of Casino Gaming ballot measure in Florida (the "Gaming Measure").

20.     Grassfire has contracts with and is legally obligated to third parties to run this Campaign.

21.     Grassfire's main function in the Campaign is to provide on the ground operations to obtain and submit to government authorities Florida voter signatures for the Gaming Measure.

4

22.     These operations include hiring and managing employees who will physically meet with voters in public locations across Florida and obtain the voters' signatures on a signature roll.

23.     Under Florida law, all voter signatures must be verified by February 1, 2022 for the Gaming Measure to appear on the ballot for the November 8, 2022 General Election.

24.     Because government officials have 30 days to verify the signatures, all signatures for the Gaming Measure must be obtained, organized, and submitted to government officials 30 days prior to February 1, 2022.

25.     In or about June 2021, Grassfire entered into an agreement with Steven Larry Laws ("Laws") for Laws to lead and manage Grassfire's Campaign (the "Agreement").

26.     Laws' main duty under the Agreement was to train and manage several Grassfire contractors called "coordinators".

27.     Susan Mays, Amber Murray, Steve Murray, Devon Ward, Farelle Walker, Dan Fessler, Michele Laws, and Brian Lenhart are the coordinators and Grassfire contractors that Laws was entrusted to train and manage.

28.     Some of these coordinators executed written agreements with Grassfire.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

29.    In these agreements, the coordinators promised that they "recognize[] the importance of protecting GRASSFIRE's intellectual property, trade secrets, and business knowledge. Coordinator will not divulge this vital information items ("Information") which are valuable, special, and unique assets of GRASSFIRE."

30.    In addition, in the written agreements the coordinators promised that "[u]pon termination of this Agreement, Coordinator shall deliver to GRASSFIRE all property, which is property or related to GRASSFIRE's business."

31.    Grassfire has written agreements with Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker, all of which are attached hereto as Exhibit A.

32.    The coordinators that did not execute written agreements agreed orally to abide by the same terms as those contained in the written agreements.

33.    Each coordinator manages a group of "circulators" (the "Circulators"), who are the employees and contractors hired by Grassfire to appear in public places throughout Florida and obtain voter signatures in support of the Gaming Measure.

34.    Grassfire places great trust in each coordinator, and each coordinator understands and accepts that trust as part of their agreement with Grassfire.

35.    The coordinators agree to be trustworthy and loyal to Grassfire in their agreement with Grassfire, including because each coordinator works directly with

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Grassfire's circulators, and the coordinators oftentimes are the only point of contact between Grassfire and its circulators.

36.     Laws, the coordinators, and the Circulators are critical to Grassfire's Campaign to obtain support for the Gaming Measure.

37.     Without Laws and particularly without the coordinators he manages, Grassfire cannot meet its contractual obligations with respect to the Gaming Petition by December 31, 2021.

38.     Because the Circulators are so critical to Grassfire's operations, because there are many individuals, groups, and corporations opposed to the Gaming Measure, and because the Circulators are entrusted with confidential and proprietary information, Grassfire had most of the Circulators execute non-compete agreements.

39.     In addition, many of the Circulators, when they are hired by Grassfire, execute written confidentiality agreements, including agreements that state the following: "Circulator recognizes the importance of protecting GRASSFIRE's intellectual property, trade secrets, and business knowledge. Circulator will not divulge these vital information items ("Information") which are valuable, special, and unique assets of GRASSFIRE."

40.     Circulators who do not sign written agreements agree orally to these same terms.

41.     Grassfire placed great trust in Laws.

42.     Laws understood this great trust and accepted the trust including by repeatedly affirming to Grassfire, as part of his Agreement with Grassfire, that he was loyal and trustworthy and that he would not sabotage the Campaign.

43.     Grassfire gave Laws proprietary and confidential information belonging to Grassfire, including Grassfire's employee information, Grassfire's contracts, and Grassfire's processes and procedures.

44.     Laws was given confidential access to individuals and companies that own property in public locations where Grassfire has been allowed by these individual and companies to solicit voter signatures.

45.     Laws undertook for Grassfire the organization of Grassfire's headquarters for the Campaign in Clearwater, Florida.

46.     Laws found the office space and set up Grassfire's internet access at the Clearwater headquarters.

47.     Internet access at Grassfire's headquarters is critical to Grassfire's operation, including because the internet is used to scan in, store, verify, and upload to government officials the voter signatures collected by Grassfire, and it is used to process payroll for Grassfire's employees, including the Circulators.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

48.     Laws was entrusted with Grassfire's valuable relationship with each coordinator.

49.     To date, Grassfire has paid substantial sums to Laws for his services.

50.     In late September, Laws informed Grassfire that an organization opposed to the Gaming Measure had offered Laws $1,000,000.00 to stop working for Grassfire and to sabotage Grassfire's Campaign.

51.     Laws informed Grassfire that he had rejected that offer, and that he would never accept such an offer, no matter how much money was offered.

52.     Thus, Grassfire trusted Laws even more and gave him even more authority.

53.     Grassfire uses its trade secrets and confidential information in its operations generally, and specifically with respect to the Campaign, including without limitation the following trade secrets: Coordinator contact information (including names, addresses, phone numbers, and email address), Grassfire processes, procedures, and strategies for gathering signatures and submitting signatures for verification, and data identifying signature gathering locations and identifying the owners of the properties (collectively, the "Trade Secrets").

54.     Grassfire uses its Trade Secrets in interstate U.S. commerce.

9

55.     Including because Grassfire's signature gathering operations often deal with hotly contested political issues and legislation that could financially impact many companies and individuals, Grassfire is deeply concerned about the security of its Trade Secrets and actively takes steps to keep the Trade Secrets confidential.

56.     As described above, Grassfire requires its coordinators and Circulators to agree to continentality provisions.

57.     Grassfire's documents that contain the Trade Secrets are stored in cloud storage locations that are password protected, and access to those documents is restricted to only certain employees and contractors.

58.     Only Laws had access to the most sensitive documents.

59.     Grassfire's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the Trade Secrets.

**In Exchange for a Massive Payment, Laws Hatches and Executes an Illegal Scheme to Sabotage Grassfire's Campaign**

60.     Upon information and belief, sometime prior to October 15, 2021, Laws negotiated and accepted a second offer to receive significant compensation from third parties in exchange for his efforts to wrongfully sabotage Grassfire's Campaign.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

61.     Upon information and belief, the persons or entities making this deal with Laws are opposed to the Gaming Measure for personal economic reasons (collectively, the "Competitors")—they stand to lose large amounts of money if Florida voters exercise their first amendment rights to adopt the Gaming Measure.

62.     The Seminole Tribe of Florida is the main actor amongst the Competitors. Due to gambling laws in Florida, the Seminole Tribe holds a commanding market share on gambling activities in the state. If the Gaming Measure passes, the Seminole Tribe will lose its market share, and thus stands to lose a significant amount of money if the Gaming Measure passes.

63.     These Competitors and the Seminole Tribe desire to suppress the votes of Florida's citizens, and to interfere with the exercise of Florida's citizens' first amendment right to vote in favor of the Gaming Measure, primarily to preserve their monopoly on gaming in the state of Florida.

64.     Upon information and belief, on October 15, 2021, Laws and his girlfriend Renee Gordon began execution of his scheme to illegally sabotage Grassfire's Campaign.

65.     Specifically, Laws and Gordon immediately began recruiting each coordinator to disrupt and sabotage the Campaign in exchange for large compensation, including without limitation by (a) immediately stopping work for

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Grassfire, (b) hiring away Circulators, (c) spreading lies to Circulators and others about Grassfire, (d) ruining Grassfire's relationships with individuals that own property on which Grassfire is allowed to solicit signatures, and (e) immediately beginning work on a dummy petition designed by the Competitors that has no legal effect, that will never be submitted for appearance on the Florida ballot, and that is designed to confuse and distract from the initiative to get the Gaming Measure on the Florida ballot (the "Dummy Petition").

66.    On Monday, October 18, 2021, Laws informed Grassfire that he was terminating his relationship with Grassfire and that he was taking some or all of the coordinators with him.

67.    Upon information and belief, Susan Mays, Amber Murray, Devon Ward, Farelle Walker, Michele Laws, and Brian Lenhart (all the Grassfire coordinators except Dan Fessler) (the "Breaching Coordinators") accepted Laws' offers.

68.    Upon information and belief, the Breaching Coordinators, Laws, and Gordon have met together and decided together on a plan of action to sabotage Grassfire's Campaign, and they have now executed that plan.

69.    All of the Breaching Coordinators have stopped working on the Grassfire Campaign.

12

70.     At least some and, upon information and belief, all of the Breaching Coordinators have also successfully persuaded some of Grassfire's Circulators to quit working for Grassfire.

71.     Upon information and belief, Laws, the Breaching Coordinators, and Gordon contacted Grassfire's Circulators to persuade them to leave Grassfire and the Campaign before Laws and the Breaching Coordinators notified Grassfire that they were no longer working for Grassfire.

72.     Michele Laws offered Circulators large payments to quit working on the Grassfire Campaign and begin working on the Seminole campaign.

73.     Larry Laws was aware that Grassfire's main principal working in Florida on the Campaign—Lee Vasche—would be out of town in Oregon on October 18, 2021 and that entire week for the purpose of closing on a personal home sale in Oregon.

74.     Upon information and belief, Laws intentionally timed his sabotage of the Campaign to begin when Vasche would be gone, and when Vasche would be unable to have face-to-face contact with Grassfire employees, including Coordinators, to assure them that Grassfire's Campaign was alive and well.

75.     Upon information and belief, Laws has or will be paid over $1,000,000.00 for his sabotage, and likely around $2,000,000.00 in total.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Page 13 of 42        131765504241C6

**Laws and the Breaching Coordinators Defame Grassfire**

76.    Some and, upon information and belief, likely all of the Breaching Coordinators began telling Grassfire's Circulators that Grassfire has stopped the Campaign, was dropping its support of the Gaming Petition, was leaving town, and was about to fire all the Circulators.

77.    On October 19, 2021, Michele Laws texted a large group of Circulators and stated "[w]e are no longer working the Grassfire Campaign. We are working the Seminoles Compact Campaign. We are not permitted to work both.  Our goal is to keep everyone working for as long as possible this season and the Seminoles Campaign is the best choice."

78.    These statements, and the implications that Grassfire will not keep its employees working and is not running the Campaign, are false.

79.    Since October 18, 2021, Dan Fessler has been contacted by numerous Circulators that had been working under the Breaching Coordinators, and these Circulators informed Fessler that they had been told by the Breaching Coordinators that Grassfire had quit the Campaign and that they should throw away their unsigned petitions.

80.    A Grassfire employee named Diana Watt has been told by numerous Circulators since October 18, 2021, that Amber Murray told numerous Circulators

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Page 14 of 42          141765504241C6

that the Campaign was over and that the Circulators needed to sign updated paperwork.

81.     Upon information and belief, the "updated paperwork" was a contract to work on the Dummy Petition and stop working for Grassfire.

82.     The Circulators were not told that this was the purpose of the updated paperwork, and were instead led to believe by Amber Murray that it was paperwork that Grassfire asked the Circulators to sign.

83.     On October 17, 2021—one day before Grassfire had any idea that Laws and the Breaching Circulators were leaving—Steve Murray contacted one Circulator named Tedrick Dorsey and told him that "we aren't doing the Grassfire petition any longer".

84.     That led Dorsey to believe that Grassfire had quit working on the Campaign.

85.     That same day Murray offered Dorsey a job working for the competing operation backed by the Seminole tribe, and gave to Dorsey a contract to sign with the Seminole tribe.

86.     The statements by the Breaching Coordinators are false and defamatory to Grassfire.

87.     These false and defamatory statements have caused both monetary and reputational injury to Grassfire.

## Laws and the Breaching Coordinators Mislead Regarding the Dummy Petition

88.     Laws, the Breaching Coordinators, and Gordon have hired many of the Circulators to immediately begin work on the Dummy Petition.

89.     The Breaching Coordinators have intentionally misled the Circulators regarding the purpose and intended result of the Dummy Petition, including by misrepresenting that the Dummy Petition is real and is intended to get a measure on the Florida ballot for the vote occurring on November 8, 2022 General Election.

90.     Prior to October 15, 2021, an individual named Cecilia Jackson was working for Grassfire as a Circulator under the coordinator Steve Murray.

91.     Upon information and belief, when Steve Murray left Grassfire, he enlisted the help of Jackson to sabotage the Campaign.

92.     Upon information and belief, Jackson joined the Seminole Tribe effort to defeat the Gaming Measure with Murray.

93.     On October 26, 2021, a Circulator working under Jackson prior to Jackson leaving handed in to Jackson 90 signatures in support of the Gaming Measure.

16

94.    Despite not working for Grassfire or in favor of the Campaign, and, upon information and belief, at the direction of Murray, Jackson accepted the 90 signatures and told the Circulator that the Circulator was doing the right thing for the right company.

95.    The Circulator was not told and was otherwise unaware that Jackson was not working for Grassfire or the Gaming Measure, or that Jackson was working in support of the Seminole Tribe.

96.    At that same meeting, Jackson handed to the Circulator a signature sheet for the Dummy Petition. Jackson did not inform the Circulator that the sheet was for the Dummy Petition, and the Circulator believed that the sheet was to be used to collect signatures for the Gaming Measure.

97.    On October 31, 2021, the Circulator attempted to turn in 67 signatures on the Dummy Petition to a coordinator at Grassfire.

98.    The Circulator was then informed for the first time that the signatures were not on the Gaming Measure and were instead in support of the Dummy Petition.

99.    The Circulator was forced to return back to Jackson to ask for the 90 signatures given to her on October 26, 2021.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

171765504241C6

100.   Upon information and belief, Jackson's efforts to mislead this Circulator were done in concert and as part of a coordinated effort with Steve Murray and likely all the other Breaching Coordinators.

**Laws Severs Grassfire's Internet Access**

101.   On October 19 or October 20, 2021, upon information and belief, Laws contacted the internet service provider for Grassfire at the Clearwater headquarters and, holding himself out as an agent of Grassfire, directed the provider to shut off the internet access at the Clearwater headquarters.

102.   Laws was one of only three Grassfire representatives that were on file with the internet service provider as authorized agents for Grassfire with respect to the internet access account.

103.   An agent of the internet service provider confirmed that one of the authorized Grassfire representatives had called in and instructed the provider to terminate internet access.

104.   The two other representatives have confirmed that they did not shut off internet access.

105.   The termination of internet access at the Clearwater headquarters has devastated Grassfire's campaign.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

106.   Without internet access, Grassfire was unable to upload and verify voter signature rolls for several days. Because there are strict deadlines to submit signatures for verification, every day is vital to the Campaign especially in these last several weeks, and these lost days due to the internet outage may cause the Campaign to fail.

107.   Moreover, without internet access, Grassfire was unable to process payroll, and Grassfire's employees were not paid on time.

108.   This further weakened Grassfire's relationship with its employees and Circulators, which relationship was already greatly damaged by Laws' and the Breaching Coordinators' recruitment efforts and misrepresentations to the Circulators.

109.   Laws was aware that shutting off internet access would have these negative effects on Grassfire and the campaign, and upon information and belief, Laws shut off the internet access specifically so these harms would occur.

**Laws and the Breaching Coordinators Instruct Grassfire Employees to Lie to Grassfire**

110.   Laws and the Breaching Coordinators have also been telling Grassfire's Circulators to lie to Grassfire.

111.   Specifically, when some Circulators indicated that they were accepting Laws' and the Breaching Coordinators' offers to immediately stop working on the

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Campaign, Grassfire principals informed these Circulators that they would not receive the bonuses they might otherwise receive if they were still working on the Campaign.

112.   The Breaching Coordinators then instructed the Circulators to lie to Grassfire principals and promise that they would continue work even though the Circulators had no intention to continue working on the Campaign.

113.   Upon information and belief, the Breaching Coordinators gave this instruction so that Grassfire would pay the bonuses and thereby deplete their financial reserves of Grassfire, and so that Grassfire would be lulled into not hiring other Circulators to replace the Circulators that intended to stop working.

114.   An example text from Michele Laws giving these instructions to lie is attached as Exhibit B.

**Laws and the Breaching Coordinators Steal Grassfire's Confidential Information**

115.   In executing his plan to sabotage the Campaign, Laws, Gordon, and the Breaching Coordinators have illegally stolen Grassfire's Trade Secrets and confidential business information.

116.   Laws, Gordon, and the Breaching Coordinators are now using these Trade Secrets and confidential information to sabotage the Campaign.

117.   The confidential information they stole includes lists of coordinators and their personal contact information and lists of Circulators and their personal contact information.

118.   The misappropriated Trade Secrets also includes Grassfire's confidential processes and procedures for executing the Campaign—Laws, Gordon, and the Breaching Coordinators are intimately aware of critical components of the Campaign, and they purposely designed their sabotage to attack these components and inflict the most damage possible.

119.   The misappropriated Trade Secrets also includes Grassfire's signature solicitation locations and relationships with the property owners at these locations.

120.   Because collecting signatures requires in-person contact, the Covid-19 pandemic has made soliciting signatures for petitions much more difficult, including due to government restrictions on congregating, citizens' fears of leaving their homes and congregating with strangers, employees' and circulators' fears of in-person contact with strangers, and property owners' fears of allowing individuals to congregate on their properties for the purpose of collecting signatures.

121.   For example, a Court in California gave the effort to recall Governor Newson a 120-day extension to obtain signatures specifically because of the

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

difficulties in collecting signatures caused by the pandemic. An article describing this extension is attached as Exhibit C.

122.   Laws, Gordon, and the Breaching Coordinators are and have been aware of these challenges, and are and have been aware of the effect their sabotage would have on the Campaign in conjunction with the effects of the pandemic.

123.   Laws, Gordon, and the Breaching Coordinators have designed their activities in sabotaging the Campaign to take advantage of these weaknesses and challenges.

124.   Upon information and belief, Laws, Gordon, and the Breaching Coordinators are wrongfully using Grassfire's Trade Secrets in carrying out their plan to sabotage the Campaign.

125.   Laws, Gordon, the Breaching Coordinators, and the Competitors for which they now work, have one single objective in sabotaging the Campaign—to suppress the exercise of the first amendment and voting rights of millions of Florida citizens for financial gain of Laws, the Breaching Coordinators, and the Competitors.

126.   The sabotage conducted by Laws, Gordon, and the Breaching Coordinators has severely crippled the Campaign.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

127.   As of October 29, 2021, it is estimated that the sabotage conducted by Laws, Gordon, and the Breaching Coordinators has led to the loss of around 75 Circulators.

128.   Whereas in prior weeks, the number of signatures gathered by the Campaign was increasing 20% each week, during the week of October 25, 2021, the number of signatures gathered declined 35%.

129.   If the sabotage is allowed to continue, the Campaign will almost certainly collapse entirely.

130.   Laws', Gordon's, and the Breaching Coordinators' actions have damaged Grassfire.

### Count I
### (Violation of the Florida Deceptive and Unfair Trade Practices Act Against All Defendants)

131.   Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

132.   Laws', Gordon's, and the Breaching Coordinators' actions in sabotaging the Campaign offend public policy, and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. The actions supporting this count include, without limitation, the following acts: using Grassfire's confidential information and trade secrets against Grassfire; severing

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

231765504241C6

Grassfire's internet access; telling Grassfire's Circulators that Grassfire has stopped the Campaign, was dropping its support of the Gaming Petition, was leaving town, and was about to fire all the Circulators; giving Grassfire's Circulators paperwork to sign and representing that the paperwork was from Grassfire, when the paperwork was not from Grassfire;  taking from Circulators signatures gathered on the Campaign and not submitting them to Grassfire; misrepresenting the Circulators about the purpose and effect of the Dummy Petition; and instructing Grassfire's Circulators to lie to Grassfire.

133.   Laws', Gordon's, and the Breaching Coordinators' misrepresentations to the Circulators will harm the Circulators, including because the Circulators will receive less income working for the competing operation than working for Grassfire.

134.   Laws', Gordon's, and the Breaching Coordinators' misrepresentations to the Circulators will also harm the rights of Florida voters to have their voices heard in the upcoming election.

135.   Laws', Gordon's, and the Breaching Coordinators' actions have injured Grassfire, including because Grassfire has lost Circulators, will be unable to obtain the same number of signatures for the Campaign, will be unable to meet its contractual obligations, and will make less revenue.

24

136. Pursuant Fla. Stat. Ann. section 501.211(1), Grassfire is entitled to and requests a declaratory judgment that Laws' and the Breaching Coordinators' actions violate the Florida Deceptive and Unfair Trade Practices Act.

137. Pursuant Fla. Stat. Ann. section 501.211(1), Grassfire is entitled to a temporary restraining order, preliminary injunction, and declaratory injunction prohibiting Laws' and the Breaching Coordinators' actions that violate the Florida Deceptive and Unfair Trade Practices Act.

138. Pursuant Fla. Stat. Ann. section 501.211(2), Grassfire is entitled to its actual damages, plus attorney's fees and court costs.

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.    For damages in an amount to be proven at trial;

B.    For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, and to cease making false statement about Grassfire.

C.    For pre and post judgment interest;

25

D.    For an award of attorneys fees and costs incurring in bringing this action;

<h2 align="center">Count II<br>(Defamation Against All Defendants)</h2>

139.   Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

140.   Laws, Gordon, and the Breaching Coordinators have defamed Grassfire, including without limitation by (a) falsely telling Circulators that Grassfire has stopped the Campaign, was dropping its support of the Gaming Petition, was leaving town, and was about to fire all the Circulators and (b) falsely telling Circulators that they were now working for the Seminole campaign.

141.   Laws, Gordon, and the Breaching Coordinators made these false statements with malice.

142.   Laws, Gordon, and the Breaching Coordinators knew, at all times relevant herein, that their statements about Grassfire and the Campaign were false.

143.   As a result of this defamation, Grassfire has been damaged in an amount to be proven at trial.

144.   Grassfire has also suffered damage to its reputation as a result of this defamation.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

145. Laws', Gordon's, and the Breaching Coordinators' defamation has caused irreparable harm and will cause additional irreparable harm to Grassfire if allowed to continue.

146. Grassfire is entitled to a temporary restraining order, preliminary injunction, and permanent injunction ordering Laws and the Breaching Coordinators to stop making defamatory statements regarding Grassfire, including without limitation to stop making statements that (a) Grassfire has stopped the Campaign, was dropping its support of the Gaming Petition, was leaving town, and was about to fire all the Circulators and (b) that Circulators are now working for the Seminole campaign.

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.     For damages in an amount to be proven at trial;

B.     For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease making false statement about Grassfire;

C.     For pre and post judgment interest.

**Count III**
**(Tortious Interference with Present and Prospective Business Relationship Against All Defendants)**

147. Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

148. Laws, Gordon, and the Breaching Coordinators intentionally and unjustifiably interfered with Grassfire's present and prospective business relationships under which Grassfire has legal rights, including without limitation by defaming Grassfire, by misappropriating Grassfire's trade secrets and business confidential information, by encouraging Grassfire's Circulators to breach their employment and non-compete agreements with Grassfire, and by instructing Grassfire's Circulators to lie to Grassfire about their future employment at Grassfire.

149. Laws has further intentionally and unjustifiably interfered with Grassfire's present and prospective business relationships under which Grassfire has legal rights by posing as an agent of Grassfire and directing Grassfire's internet service provider to cut off Grassfire's internet access at Grassfire's headquarters.

150. Laws', Gordon's, and the Breaching Coordinators' actions constitute improper means.

151. Laws, Gordon, and the Breaching Coordinators knew or should have known that their actions were in violation of the law.

152. Furthermore, Laws, Gordon, and the Breaching Coordinators are interfering with Grassfire's present and prospective business relationships under

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

which Grassfire has legal rights for an improper purpose, including for the sole objective of destroying Grassfire's Campaign.

153.   Laws, Gordon, and the Breaching Coordinators have full knowledge of Grassfire's business relationships described herein, including Grassfire's relationship with its client and relationship with its employees.

154.   Laws', Gordon's, and the Breaching Coordinators' interference has damaged Grassfire in an amount to be proven at trial.

155.   Laws'. Gordon's, and the Breaching Coordinators' interference has caused irreparable harm and will cause additional irreparable harm to Grassfire if allowed to continue.

156.   Grassfire is entitled to a temporary restraining order, preliminary injunction, and permanent injunction ordering Laws, Gordon, and the Breaching Coordinators to stop interfering with Grassfire's contracts and existing or potential economic relations.

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.   For damages in an amount to be proven at trial;

B.   For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease all activities to sabotage the

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, to cease making false statement about Grassfire, and to cease interfering with Grassfire's contracts and existing or potential economic relations.

C.    For pre and post judgment interest;

## Count IV
### (Violation of the Federal Defend Trade Secrets Act – 18 U.S.C.A. § 1832 and 1836 Against All Defendants)

157.    Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

158.    Laws, Gordon, and the Breaching Coordinators had access to Grassfire's Trade Secrets.

159.    Grassfire actively took steps to keep the Trade Secrets confidential.

160.    Grassfire, not Laws, Gordon, or the Breaching Coordinators, owns the Trade Secrets.

161.    Laws, Gordon, and the Breaching Coordinators knew that the information was Grassfire's trade secrets.

162.    Laws, Gordon, and the Breaching Coordinators used improper means to acquire Grassfire's Trade Secrets by devising and carrying out their plan to defraud and steal from Grassfire as set forth above.

30

163.   Laws, Gordon, and the Breaching Coordinators have used and intend to continue using Grassfire's Trade Secrets for their personal economic benefit to the detriment of and without compensation to Grassfire.

164.   Laws, Gordon, and the Breaching Coordinators stole and misappropriated Grassfire's Trade Secrets and intended to misappropriate Grassfire's Trade Secrets.

165.   Laws', Gordon's, and the Breaching Coordinators' theft and misappropriation of Grassfire's trade secrets was, upon information and belief, conducted in a willful and malicious manner for an improper purpose.

166.   Laws', Gordon's, and the Breaching Coordinators' theft and misappropriation of Grassfire's Trade Secrets has directly and proximately damaged Grassfire and its business.

167.   Grassfire is therefore entitled to an award of actual damages in an amount to be proven at trial.

168.   Because Laws', Gordon's, and the Breaching Coordinators' misappropriation of Grassfire's Trade Secrets may have been conducted in a willful and malicious manner, Grassfire may also be entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) in an amount not exceeding two times the award of damages as well as its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

311765504241C6

169.  At all material times, the above-described actions have caused continue to cause irreparable injury to Grassfire, for which Grassfire has no adequate remedy at law, and will continue to suffer injury unless enjoined.

170.  Grassfire is entitled to injunctive relief against Laws, Gordon, and the Breaching Coordinators to prevent further harm to Grassfire.

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

D.  For damages in an amount to be proven at trial;

E.  For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease the misuse of Grassfire's confidential business information and trade secrets, and to return to Grassfire all its confidential information.

F.  For two times the award of damages;

G.  For pre and post judgment interest;

H.  For an award of attorneys fees and costs incurring in bringing this action;

### Count V
### (State Misappropriation of Trade Secrets (Fla. Stat. Ann. § 688.001 (West) *et seq*. Against All Defendants))

171.  Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

Page 32 of 42     321765504241C6

172.   For all the same reasons set forth above in relation to the Fourth Cause of Action, Violation of the Federal Defend Trade Secrets Act – 18 U.S.C.A. § 1832 and 1836, Laws, Gordon, and the Breaching Coordinators have misappropriated Grassfire's trade secrets under Florida law.

173.   At all material times, the above-described actions have caused and continue to cause irreparable injury to Grassfire, for which Grassfire has no adequate remedy at law, and will continue to suffer injury unless enjoined.

174.   Grassfire is entitled to injunctive relief against Defendants to prevent further harm to Grassfire.

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.   On all causes of action, for damages in an amount to be proven at trial;

B.   For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease the misuse of Grassfire's confidential business information and trade secrets, and to return to Grassfire all its confidential information.

C.   For pre and post judgment interest;

D.   For an award of attorneys fees and costs incurring in bringing this action;

33

## Count VI
### (Conspiracy to Misappropriate Trade Secrets / Business Confidential Information Against All Defendants)

175. Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

176. Laws, while a Grassfire agent, had access to and was in possession of Grassfire's Trade Secrets for him to perform his contractual obligations to Grassfire.

177. Laws, Gordon, and the Breaching Coordinators have conspired together to misappropriate and use the Grassfire Trade Secrets and confidential business information Laws had access to while an agent of Grassfire to sabotage the Campaign.

178. The Trade Secrets Laws, Gordon, and the Breaching Coordinators conspired to misappropriate includes, but is not limited to, lists of Coordinators and their personal contact information, lists of Circulators and their personal contact information, Grassfire's confidential processes and procedures for executing the Campaign, and Grassfire's signature solicitation locations and relationships with the property owners at these locations.

179. Laws', Gordon's, and the Breaching Coordinators' actions have damaged Grassfire.

34

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.    For damages in an amount to be proven at trial;

B.    For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease the misuse of Grassfire's confidential business information and trade secrets, and to return to Grassfire all its confidential information.

C.    On all causes of action, for pre and post judgment interest;

D.    For an award of attorneys fees and costs incurring in bringing this action;

## Count VII
### (Breach of Contract Against All Defendants Except Gordon)

180.   Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

181.   The Agreement is a valid and enforceable contract between Laws and Grassfire.

182.   Grassfire has fully performed on all its material obligations under this Agreement with Laws.

183.   The Breaching Coordinators have valid and enforceable agreements with Grassfire.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

184. Grassfire has fully performed on all its material obligations under these agreements with the Breaching Coordinators.

185. By all the actions described above, Laws has breached his Agreement with Grassfire, including without limitation by all his actions to sabotage the Campaign, and by misappropriating and misusing Grassfire's confidential business information and trade secrets.

186. By all the actions described above, the Breaching Coordinators have breached their agreements with Grassfire, including without limitation by all their actions to sabotage the Campaign, by misappropriating and misusing Grassfire's confidential business information and trade secrets, and by refusing to return Grassfire's confidential business information to Grassfire.

187. Laws' and the Breaching Coordinators' breaches have damaged Grassfire in an amount to be proven at trial.

188. Laws' and the Breaching Coordinators' breaches have caused irreparable harm and will cause additional irreparable harm to Grassfire if allowed to continue.

189. Grassfire is entitled to a temporary restraining order, preliminary injunction, and permanent injunction ordering Laws and the Breaching Coordinators to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's

36

confidential business information and trade secrets, and to return to Grassfire all its confidential information.

WHEREFORE, Grassfire prays for judgment against all Defendants except Gordon as follows:

A.    On all causes of action, for damages in an amount to be proven at trial;

B.    For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, to cease making false statement about Grassfire, and to cease interfering with Grassfire's contracts and existing or potential economic relations.

C.    For pre and post judgment interest;

**Count VIII**
**(Breach of Covenant of Good Faith and Fair Dealing against Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker)**

190.    Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

191.    Implied in the written agreements between Grassfire, and Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker is a covenant of good faith and fair dealing.

27

192.   By their actions described above, including without limitation their actions to sabotage the Campaign, Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker breached the covenant of good faith and fair dealing.

193.   Grassfire, Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker reasonably excepted when they entered into their agreements that Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker would not take actions to sabotage the Campaign, including without limitation as described above.

194.   As a result of this breach of the covenant of good faith and fair dealing, Grassfire has been damaged in an amount to be proven at trial.

WHEREFORE, Grassfire prays for judgment against Amber Murray, Brian Lenhart, Michelle Laws, and Farelle Walker as follows:

A.     For damages in an amount to be proven at trial;

B.     For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, to cease making false statement about Grassfire, and to cease interfering with Grassfire's contracts and existing or potential economic relations.

C.     For pre and post judgment interest;

38



**Count IX**
**(Injunctive Relief Against All Defendants)**

195.   Plaintiff re-alleges the allegations contained in paragraphs 1-130 as though fully set forth herein.

196.   Grassfire will suffer immediate and irreparable harm unless the Court issues the injunction sought herein.

197.   The threatened injury to Grassfire outweighs whatever damage the injunction may cause to Defendants.

198.   The injunction and/or order, if issued, would not be adverse to the public interest.

199.   There is a substantial likelihood that Grassfire will prevail on the merits of its underlying claims against Defendants.

200.   Grassfire is entitled to a temporary restraining order, preliminary injunction and/or permanent injunction against Defendants ordering them to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, to cease making false statement about Grassfire, to cease interfering with Grassfire's contracts and existing or potential economic relations, and to cease recruiting Grassfire's Circulators.

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

391765504241C6

WHEREFORE, Grassfire prays for judgment against all Defendants as follows:

A.     For a temporary restraining order, preliminary injunction, and permanent injunction ordering Defendants to cease all activities to sabotage the Campaign, to cease the misuse of Grassfire's confidential business information and trade secrets, to return to Grassfire all its confidential information, to cease making false statement about Grassfire, and to cease interfering with Grassfire's contracts and existing or potential economic relations.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true to the best of my knowledge and belief.

DATED this <u>17th</u> day of November, 2021.

By: _Lee Vasche_ _____
      Lee Vasche, Manager of Grassfire, LLC

40

STATE OF UTAH                )
                             :ss.
COUNTY OF SALT LAKE    )

On this 17th ____ day of November, 2021, personally appeared before me the

undersigned authority in and for the aforesaid County and State, within my

jurisdiction, the within name Lee Vasche, whose identity is personally known to

me or proven on the basis of satisfactory evidence and who by me duly

sworn/affirmed, did confirm that his the manager of Grassfire, LLC and is the

person whose name is subscribed to the foregoing instrument, acknowledged that

he executed the same for the purpose and consideration therein expressed as the act

and deed of said corporation and in the capacity therein stated. This notarization

was performed remotely via the use of audio-visual communication.

    WITNESS my hand and official seal in the County and State last aforesaid

this ____ 17th ____ day of November, 2021.



MEGAN FLETCHER
NOTARY PUBLIC
STATE OF UTAH
Commission # 710337
My Comm Exp. Feb 08, 2024

SEAL

Notarial act performed by audio-visual communication



Signature of Notary Public

Megan Fletcher

Print Name of Notary Public

My commission expires 02-08-2024 ____

DocVerify ID: 20962EC6-6FF3-466A-A865-1765504241C6
www.docverify.com

 

**Grassfire v Laws - Verified Complaint final 11-17-21.pdf**

DocVerify ID:  20962EC6-6FF3-466A-A865-1765504241C6
Created:       November 17, 2021 13:12:33 -8:00
Pages:         42
Remote Notary: Yes / State: UT

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

**E-Signature Summary**

**E-Signature 1: Lee Vasche (LJv)**
November 17, 2021 13:30:46 -8:00 [47FE2840B762] [108.190.83.4]
lee@grassfire.us (Principal) (ID Verified)

**E-Signature Notary: Megan Fletcher (MF)**
November 17, 2021 13:30:46 -8:00 [7D67A807250C] [50.236.250.226]
mfletcher@fabianvancott.com
I, Megan Fletcher, did witness the participants named above electronically
sign this document.



documents, documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All signature stamps, signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons true signature as rendered by various Acts and/or Laws.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2021, I electronically filed the

foregoing Verified Complaint with the Clerk of Court using the CM/ECF System.

        /s/ George Parpas

George Parpas, Esquire
Florida Bar No. 1018371
WILLIAMS PARKER HARRISON
DIETZ & GETZEN, PLLC
200 South Orange Avenue
Sarasota, Florida 34236
Tel: (941) 366-4800
Fax: (941) 366-5109
gparpas@williamsparker.com
dhanke@williamsparker.com
Attorneys for Plaintiffs

6779980.v1